# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## EASTERN DIVISION

JASON E. FENNER                                                                                                          PLAINTIFF
ADC #127315

v.                                                2:16CV00113-JM-JJV

LYLES, Corporal, East Arkansas
Regional Unit, ADC; *et al*.                                                                                  DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge James M. Moody, Jr. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.   Why the record made before the Magistrate Judge is inadequate.

2.   Why the evidence proffered at the hearing (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.   The details of any testimony desired to be introduced at the new hearing in the form

of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the new hearing.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing. Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## **DISPOSITION**

### I. INTRODUCTION

Jason E. Fenner ("Plaintiff") is an inmate at the East Arkansas Regional Unit, Arkansas Department of Correction in Marianna, Arkansas. He filed this action *pro se* pursuant to 42 U.S.C. § 1983. (Doc. No. 2.) He alleges Defendants were deliberately indifferent to his serious medical needs when they did not acknowledge his pleas for aid and reacted unhurriedly to his requests for emergency medical assistance. (*Id.* at 5-10.)

Defendant Speed, the remaining defendant in this cause of action, has filed a Motion to Dismiss (Doc. No. 29) and Plaintiff has not responded. Therefore, the matter is ripe for a decision.

Defendant Speed argues he is entitled to qualified immunity because Plaintiff has failed to state an actionable claim of constitutional deliberate indifference. After carefully reviewing the pleadings, for the following reasons, I find Defendant Speed is entitled to qualified immunity and his Motion to Dismiss should be GRANTED.

### II. STANDARD OF REVIEW

#### A. Motion to Dismiss

When considering a motion to dismiss under Rule 12(b)(6), the court must accept as true all of the factual allegations contained in the complaint and all reasonable inferences from the complaint

2

must be drawn in favor of the nonmoving party. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Young v. City of St. Charles, Mo.*, 244 F.3d 623, 627 (8th Cir. 2001). The court should read "the complaint as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009).

**B.    Qualified Immunity**

To determine whether a defendant is entitled to qualified immunity, courts generally consider two questions: (1) whether the facts alleged or shown, construed in the light most favorable to the plaintiff, establish a violation of a constitutional or statutory right; and (2) whether that right was so clearly established that a reasonable official would have known that his or her actions were unlawful. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001).[1] Defendant is entitled to qualified immunity only if no reasonable fact finder could answer both questions in the affirmative. *Nelson v. Correctional Medical Services*, 583 F.3d 522, 528 (8th Cir. 2009).

Qualified immunity protects officials who acted in an objectively reasonable manner and shields a government official from liability when his or her conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would not have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is a question of law, not a question of fact. *McClendon v. Story County Sheriff's Office*, 403 F.3d 510, 515 (8th Cir. 2005). Thus, issues concerning qualified immunity are appropriately resolved before trial. *See Mitchell v.*

---

[1]Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Nelson v. Correctional Medical Services*, 583 F.3d 522, 528 (8th Cir. 2009) (quoting *Pearson v. Callahan*, 555 U.S. at 236).

*Forsyth*, 472 U.S. 511, 526 (1985) (the privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.").

### III.   ANALYSIS

To state a claim of deliberate indifference, a claimant must establish that: (1) he suffers from an objectively serious medical need; and (2) defendant knew of but deliberately disregarded a serious risk to his health.  See *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000).

Plaintiff says that while in his cell at about 5:00 a.m. on May 12, 2016, he experienced a food-choking incident which resulted in vomiting blood, having severe chest pain, difficulty breathing, sweating profusely, and rapid heartbeat. (Doc. No. 2 at 5.) He crawled to the cell door and saw Corporals Lyles and Speed. (*Id.*) ". . .[W]ith much effort and great pain [Plaintiff] said 'I need medical emerg[e]ncy' [but] Cpl. Lyles and Cpl. [Speed] continue[d] to walk." (*Id.*) Another inmate shouted, "'Inmate in 318 says he need a medical emerg[e]ncy,' Cpl. Lyles and Cpl. [Speed] look[ed] towards 318 but continue[d] to walk and even exited ... Max 3 barrack[s]." (*Id.*)

At approximately 5:45 a.m., Sergeant Granger was doing a security check. Plaintiff said to Sergeant Granger, while "already weak and [in] grave pain, "My chest hurts," and Nurse Jane Doe was called. (Doc. No. 2 at 6.) He was escorted to the Max Infirmary for various testing while Nurse Doe alleged he was "under the influence of some 'synthetic drug, told [him he] was having 'heartburn' and gave [him] a yellow box of 'antacid' and told the officers, including Sgt. Granger, to take [him] back to his cell. . ." (Doc. No. 2 at 6.)

In his cell, Plaintiff "took a sip of water . . . suddenly buckle[d] under falling to the floor not able to breathe and in great severe pain [he] resume fetal-position  shaking. . . begging in prayer to die, after about 30 minutes [he] crawled . . . back to the [cell] door  . . ." (Doc. No. 2 at 7.) Around

4

7:30 a.m. Corporal Cousin entered the Max 3 barracks doing a security check. Plaintiff, "being weak and out of breath, [] barely yelled saying 'Help!'" (Doc. No. 2 at 8.) He remembers being taken to the Max Infirmary again, seeing Nurse Jane Doe, being given "up draft" (a treatment for asthmatics), shaking badly, and remembers seeing another nurse, Ms. Bell. He was taken to the Main Infirmary at 8:05 a.m., where Nurse Doe was arguing and alleging again that he was under influence of a 'synthetic drug' which explained his 150 to 160 heart rate. (*Id.*)

At around 8:55 a.m., the ambulance arrived but before getting on, Plaintiff was "instructed by security to strip-search, taking [him] 15-20 minutes to perform." (*Id.*) Arriving in the Emergency Room at Forrest City Hospital, he remembers hearing a doctor say, "He is going critical, he is going critical! We need to airlift him, we need to airlift! . . ." (Doc. No. 2 at 9.)

Plaintiff awakened on May 13, 2016, at approximately 5:00 p.m. in the Intensive Care Unit at the University of Arkansas for Medical Science (UAMS) hospital after surgery to repair a ruptured esophagus. He "was told by the same M.D. and Dr. Sutterland M.D. [he] was 'lucky to survive.'" (*Id.*) On June 3, 2016, he was transferred from UAMS to Ouachita River Correctional Unit Hospital, where he remained until June 20, 2016. He was deeply depressed and filed his grievances when he was discharged from the hospital.

I have very closely reviewed Plaintiff's alleged facts. (Doc. No. 6.) And giving Plaintiff all benefit of the doubt, I find Defendant Speed's actions (or inactions) do not amount to constitutional deliberate indifference.

First, the general exhibition of deliberate indifference is not itself a violation of an inmate's rights. Instead, it is a standard by which some constitutional and statutory violations are determined.[2]

---

[2] A defendant might, for instance, be found to have exhibited deliberate indifference toward an inmate's serious medical needs. The actionable violation therein is the inadequate medical care itself, not the fact that an official was deliberately indifferent.

*See Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (deliberate indifference to the serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment); *Whitson v. Stone County Jail*, 602 F.3d 920, 923 (8th Cir. 2010) (in analyzing failure to protect claims "the subjective inquiry regarding an official's state of mind is one of deliberate indifference' to inmate health or safety") (internal quotations omitted). Second, and probably most importantly, Plaintiff's allegations fail to show that Defendant Speed *actually knew* that Plaintiff was having a medical emergency. It is well established that, in order to state a viable claim for deliberate indifference to a serious medical need, a claimant must show that a defendant "actually knew of but disregarded that need." *Santiago v. Blair*, 707 F.3d 984, 990 (8th Cir. 2013).

Plaintiff and a fellow inmate called out for help and received none. But the fact that Defendant Speed turned and looked toward Plaintiff's cell and continued to walk fails to establish the requisite culpability to rise to the level of constitutional deliberate indifference to Plaintiff's serious medical needs.

Accordingly, I find no constitutional deliberate indifference by Defendant Speed. The facts alleged simply do not state a claim upon which relief may be granted and Defendant Speed should be dismissed.

**IV.    CONCLUSION**

IT IS, THEREFORE, RECOMMENDED that:

1.    Defendant Speed's Motion to Dismiss (Doc. No. 29) be GRANTED.

2.    Defendant Speed be dismissed from this cause of action with prejudice.

3.    The Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from an Order adopting these recommendations would not be taken in good faith.

Dated this 17th day of February, 2017.

                                                            JOE J. VOLPE
                                                            UNITED STATES MAGISTRATE JUDGE